UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

MICHAEL S. FLAHERTY, et al.,

    Plaintiffs,

v.

PENNY PRITZKER, in her
official capacity as Secretary
of the Department of Commerce,
et al.,

    Defendants.

Civil Action No. 11-660 (GK)

---

## MEMORANDUM OPINION

In 2011, Plaintiffs Michael S. Flaherty, Captain Alan A. Hastbacka, and the Ocean River Institute brought this suit against Defendants Commerce Secretary Gary Locke,[1] the National Oceanic and Atmospheric Administration ("NOAA"), and the National Marine Fisheries Services ("NMFS") (collectively "Defendants"). Plaintiffs alleged that Amendment 4 to the Atlantic Herring Fishery Management Plan violated the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. §§ 1801-1884, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370.

---

[1] Secretary Pritzker is substituted for Gary Locke pursuant to Federal Rule of Civil Procedure 25(d).

This matter is presently before the Court on Plaintiffs' Motion to Enforce August 2, 2012 Remedial Order Regarding Amendment 4 to the Atlantic Herring Fishery Management Plan [Dkt. No. 62]. Upon consideration of the Motion, Opposition, Reply, Motion Hearing held February 12, 2014, the entire record herein, and for the reasons stated below, Plaintiffs' Motion to Enforce is **denied**.

## I. BACKGROUND[2]

On April 1, 2011, Plaintiffs filed a Complaint challenging Amendment 4 to the Atlantic Herring Fishery Management Plan ("FMP"), developed by the New England Fishery Management Council (the "Council"). Flaherty v. Bryson, 850 F. Supp. 2d 38, 45 (D.D.C. 2012) ("Mem. Op.").

Plaintiffs' principal concern was for four species often caught incidentally with Atlantic herring but not, as of the filing of their Complaint, actively managed by the Atlantic Herring FMP. These four species are collectively referred to as "river herring": (1) blueback herring (Alosa aestivalis), (2) alewive (Alosa pseudoharengus), (3) American shad (Alosa sapidissima), and (4) hickory shad (Alosa mediocris). Id. Like Atlantic herring, river herring provide essential forage for

---

[2] A complete statutory, factual, and procedural background may be found at Flaherty v. Bryson, 850 F. Supp. 2d 38, 43-47 (D.D.C. 2012).

-2-

large fish and mammals, including cod, striped bass, bluefin tuna, sharks, marine mammals, and seabirds. Id. The Atlantic Herring FMP, as updated by Amendment 4, provides Annual Catch Limits ("ACLs") and accountability measures ("AMs") for Atlantic herring but not for river herring. Id. at 44-45.

On March 8, 2012, the Court issued a Memorandum Opinion [Dkt. No. 31] granting in part and denying in part Plaintiffs' Motion for Summary Judgment and granting in part and denying in part Defendants' Motion for Summary Judgment. On August 2, 2012, the Court issued a detailed Memorandum Order remanding the action to Defendants and containing specific guidance, as well as a timeline, for actions Defendants were to take, and complete, within one year ("Remedial Order") [Dkt. No. 41]. On November 8, 2013, Defendants filed its Final Report on Remedial Actions [Dkt. No. 60].

On November 22, 2013, Plaintiffs filed a Motion to Enforce August 2, 2012 Remedial Order Regarding Amendment 4 to the Atlantic Herring Fishery Management Plan [#62]. Defendants' Opposition was filed Dec. 23, 2013 [#65], Plaintiffs' Reply was filed January 10, 2014 [#70], and the Motion to Enforce is now ripe.

## II. STANDARD OF REVIEW

District courts have the authority to enforce the terms of their mandates. See The Fund for Animals v. Norton, 390 F. Supp. 2d 12, 15 (D.D.C. 2005) ("At the outset, the Court notes that district courts clearly have the authority to enforce the terms of their mandates."). The exercise of this authority is "particularly appropriate" when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency. See Int'l Ladies' Garment Workers' Union v. Donovan, 733 F.2d 920, 922 (D.C. Cir. 1984).

A motion to enforce should be granted if a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). However, if a plaintiff "has received all relief required by that prior judgment, the motion to enforce is denied." Id.; see also Heartland Reg'l Med. Ctr. v. Leavitt, 415 F.3d 24, 29 (D.C. Cir. 2005) ("Success on a motion to enforce a judgment gets a plaintiff only 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein.'") (quoting Watkins v. Washington, 511 F.2d 404, 406 (D.C. Cir. 1975)).

In a case where a court has remanded an administrative action to the agency for further explanation of a challenged

-4-

rule, "the court will deny a motion to enforce judgment against the agency if the agency adequately explains its reasons for adopting the rule." Thompson, 328 F. Supp. 2d at 11.

**III. ANALYSIS**

In its Memorandum Opinion, the Court held that Defendants violated (1) the MSA and APA by failing to "reasonably and rationally consider[] whether Amendment 4's definition of the fishery complied with the [MSA's] National Standards and with the MSA's directive that FMPs be generated for any fisheries requiring conservation and management"; (2) the MSA and APA by approving Amendment 4 "without addressing the minimization of bycatch to the extent practicable"; and (3) NEPA by failing to consider the environmental impacts of reasonable alternatives in its Environmental Assessment. Mem. Op. at 56, 59, 71-73.

In its Remedial Order, the Court ordered Defendants to take several specific steps to remedy these procedural failures. Plaintiffs argue that Defendants have failed to comply with the Court's Remedial Order in three ways. The Court disagrees and finds that Defendants have complied with each of the requirements set forth in the Remedial Order.

First, Plaintiffs argue that Defendants failed to meaningfully consider whether river herring should be added as a stock to the Atlantic Herring FMP. The Remedial Order required

Defendants to consider whether Amendment 4's definition of the fishery complied with the MSA and file a supplemental explanation describing its considerations in detail. Remedial Order at 10-11. Defendants filed an explanation on August 31, 2012, in which they concluded that the Council's determination was reasonable and complied with the MSA [Dkt. No. 42-1].

In addition, the Remedial Order required Defendants to send a letter to the Council "explaining the applicable law and National Standard 1 Guidelines relating to determining the stocks to be included in a fishery . . . and recommending that the Council consider, in an amendment to the Atlantic Herring FMP, whether 'river herring' should be designated as a stock in the fishery." Remedial Order at 11. Defendants sent such a letter to the Council on August 31, 2012, recommending that the Council consider whether river herring should be designated as a "stock in the fishery." Letter from John K. Bullard, Northeast Regional Administrator of the National Marine Fisheries Service to C.M. "Rip" Cunningham, Chairman of the New England Fishery Management Council at 1-3 ("Letter to Council") [Dkt. No. 42-2].[3]

---

[3] The Court notes that, on August 29, 2013, Defendants sent an additional letter to the Council reiterating its recommendations and "strongly urg[ing]" the Council to develop an amendment to consider river herring and shad as stocks in the herring fishery, among other things. Letter from John K. Bullard, Northeast Regional Administrator of the National Marine

-6-

Second, Plaintiffs argue that Defendants failed to consider a reasonable range of alternatives to the interim Atlantic Herring Acceptable Biological Catch ("ABC") control rule, including at least one based on the best available science. Defendants were ordered to recommend that the Council address reasonable alternatives to a variety of issues, including the ABC control rules, when it completed its NEPA analysis for the Final Rule entitled <u>Fisheries of the Northeastern United States; Atlantic Herring Fishery; Framework Adjustment 2 and Specifications</u>. 78 Fed. Reg. 61828-61838 (Oct. 4, 2013) ("2013-2015 Specifications"). Remedial Order at 12. Defendants were also ordered to file a completed NEPA analysis for the 2013-2015 Specifications as part of their Final Remedial Report. Remedial Order at 13.

In its letter to the Council, Defendants recommended that the Council consider alternative ABC control rules in the NEPA analysis for the 2013-2015 Specifications. Letter to Council at 3-4. The Council considered two alternatives to the ABC Control Rule in the Environmental Assessment it prepared for the 2013-2015 Specifications, and Defendants attached that analysis to its Final Remedial Report as required. Environmental Assessment

---

Fisheries Service to Ernest F. Stockwell, III, Acting Chairman of the New England Fishery Management Council at 1-2 [Dkt. No. 60-9].

for Framework Adjustment 2 to the Atlantic Herring Fishery Management Plan and Proposed Atlantic Herring Fishery Specifications for the 2013-2015 Fishing Years at 15-21, 30-33, 35-46 (Sept. 24, 2013) [Dkt. No. 60-3].

Third, Plaintiffs argue that Defendants failed to take measures necessary to minimize bycatch of river herring to the extent practicable. The Remedial Order required Defendants to "consider whether the Atlantic herring FMP minimizes bycatch to the extent practicable under National Standard 9" and file a supplemental explanation setting forth its considerations in detail. Remedial Order at 12. Defendants filed a lengthy memorandum with the Court on November 8, 2013, concluding that the Atlantic Herring FMP minimizes bycatch and bycatch mortality to the extent practicable consistent with the MSA's National Standard 9 Requirement [Dkt. No. 60-8].[4]

Plaintiffs do not deny that Defendants have completed the various actions they were ordered to perform. See Tr. of Mot. Hearing, Feb. 12, 2014, at 15, 16. Rather, Plaintiffs insist

---

[4] The memorandum addressed the FMP as amended by Amendment 5, which will be effective March 17, 2014. Fisheries of the Northeastern United States; Atlantic Herring Fishery; Amendment 5, 79 Fed. Reg. 8786-01 (Feb. 13, 2014) (to be codified at 50 C.F.R. pt. 648). Moreover, the Council has approved the river herring and shad catch cap sought by Plaintiffs, and counsel for Defendants represented that NMFS is acting with all due diligence to review that measure. Tr. of Mot. Hearing, Feb. 12, 2014, at 36-37.

-8-

that "Defendants still have not addressed these violations in any substantive way." Pls.' Reply at 3-4; see also Tr. of Mot. Hearing, Feb. 12, 2014, at 17 (arguing that "the agency has failed to remedy their substantive violations with the law, even though they hit all the procedural requirements"). This argument fails to recognize the limits on this Court's authority as well as the respective roles of the executive and judicial branches of our government.

Our Court of Appeals has made clear that "[w]hen a district court reverses agency action and determines that the agency acted unlawfully, . . . the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal." N. Air Cargo v. Postal Serv., 674 F.3d 852, 861 (D.C. Cir. 2012) (citing PPG Indus., Inc. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995). Indeed, to order the agency to take specific actions is reversible error. See Cty. of Los Angeles v. Shalala, 192 F.3d 1005 (D.C. Cir. 1999) (noting that district court erred when it devised a "specific remedy for the Secretary to follow" instead of remanding to the agency for examination of the evidence and proper fact-finding). Thus, because the violations that the Court found were procedural, the remedies the Court granted were also procedural. See id.

(concluding that appropriate remedy in APA case was remand); <u>N. Carolina Fisheries Ass'n, Inc. v. Gutierrez</u>, 518 F. Supp. 2d 62, 103 (D.D.C. 2007) (observing that MSA incorporates APA); <u>Sierra Club v. Army Corps of Engineers</u>, 701 F.2d 1011, 1029 (2d Cir. 1983) (noting that the "judicially reviewable duties that are imposed on the agencies [by NEPA] are essentially procedural") (internal quotation marks and citation omitted).

For these reasons, the Court rejected Plaintiffs' original request for injunctive relief and remanded Amendment 4 to the agency for "reconsideration and action consistent with" the Memorandum Opinion and Order. Remedial Order at 10; <u>see also id.</u> at 7-9 (rejecting Plaintiffs' request for injunction and noting that "the typical relief for a successful challenge to agency decisionmaking is a remand rather than an injunction"). Thus, this Court has already found that Plaintiffs are not entitled to the specific remedial relief they now seek.

Plaintiffs insist that this Court did order Defendants to take specific steps when it ordered Defendants to take "reconsideration <u>and action</u> consistent with" the Court's Opinion and Order. Pls. Reply at 2 (quoting Remedial Order at 10) (emphasis in original); Tr. of Mot. Hearing, Feb. 12, 2014, at 15. This argument reads too much into the word "action." In a similar case, the district court remanded a rule to the

Department of Health and Human Services ("HHS") for "action consistent with the foregoing opinion" after finding that the Secretary had failed to consider reasonable alternatives to the rule. Thompson, 328 F. Supp. 2d at 10. The plaintiff filed a motion to enforce the judgment, arguing that the "action" language indicated that the court intended to grant Plaintiff a particular substantive result. Id.

The district court rejected that interpretation. Noting that the rule had been remanded because the Secretary had failed to consider certain alternatives, it held that all that was required on remand was that it reconsider those alternatives. Id. at 13. Since HHS had done so, the court denied plaintiff's motion to enforce. Id. at 15; see also Leavitt, 415 F.3d at 28 ("The only obligation [the court] expressly imposed on the agency was to consider the two alternatives suggested during the comment period. That is precisely what the agency did.").

Similarly here, the Court identified various procedural violations committed by Defendants. Mem. Op. at 56, 59, 71-73 (finding that Defendants failed to consider whether the definition of the fishery complied with the MSA, failed to consider the environmental impacts of reasonable alternatives in its Environmental Assessment, and failed to address whether the FMP minimized bycatch to the extent practicable). Defendants

-11-

have now considered and addressed each of those issues. Thus, Plaintiffs have obtained all of the relief to which they are entitled and the motion to enforce is **denied**.[5] See Thompson, 238 F. Supp. 2d at 9 ("If the plaintiff has received all relief required by that prior judgment, the motion to enforce is denied").

This does not mean, however, that the agency's recent actions are invulnerable from review. As our Court of Appeals has repeatedly observed, Plaintiffs are free to "attack on a ground other than the agency's failure to consider reasonable alternatives - for example, on the ground that the agency arbitrarily rejected those alternatives." See Leavitt, 415 F.3d at 28; see also Bennett v. Donovan, 703 F.3d 582, 589 (D.C. Cir.

---

[5] Given that Defendants have fully complied with the Court's Remedial Order, the Court concludes that Amendment 4 is not vacated. In considering whether to vacate a flawed agency action, the law of this circuit requires a district court to consider two factors: 1) the seriousness of the deficiencies, measured by how likely it is the agency can justify its decision on remand; and 2) the "disruptive consequences" of vacatur. See Allied-Signal, Inc. v. Nuclear Regulatory Comm'n, 988 F.2d 146, 150-51 (D.C. Cir. 1993). When this Court originally considered these factors, it concluded that vacatur should be suspended for one year, "providing Defendants a window of time within which to remedy their violations without interrupting the operation of Amendment 4." Remedial Order at 5-6. Defendants have now remedied those violations, and thus there is no longer any need for vacatur. Thus, Amendment 4 remains intact, and Defendants' Motion for Clarification or, In the Alternative, to Reinstate the Stay of Vacatur of Amendment 4 Pending Resolution of Plaintiffs' Motion to Enforce [Dkt. No. 82] is **denied as moot.**

2013) (noting that plaintiff dissatisfied with an agency remedy "would always have the option to seek review on the ground that [the agency's] actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (quoting 5 U.S.C. § 706(2)(A)). Indeed, Plaintiffs have raised such claims in their Supplemental Complaint [Dkt. No. 67], and those claims will be addressed in the coming months. See Order of Jan. 27, 2014 [Dkt. No. 78] (setting briefing schedule).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Enforce August 2, 2012 Remedial Order Regarding Amendment 4 to the Atlantic Herring Fishery Management Plan [Dkt. No. 62] is **denied** and Defendants' Motion for Clarification or, In the Alternative, to Reinstate the Stay of Vacatur of Amendment 4 Pending Resolution of Plaintiffs' Motion to Enforce [Dkt. No. 82] is **denied as moot**.

An Order shall accompany this Memorandum Opinion.

February 19, 2014

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF