UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL S. FLAHERTY *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>GINA RAIMONDO *et al.*,<br><br>    *Defendants*,[1]<br><br>and<br><br>SUSTAINABLE FISHERIES COALITION,<br><br>    *Defendant-Intervenor.* | Civil Action No. 11-660 (TJK) |

## MEMORANDUM OPINION

Plaintiffs Michael Flaherty, Captain Alan Hastbacka, and the Ocean River Institute brought this suit to challenge the government's management and conservation of four species of fish—blueback herring, alewives, American shad, and hickory shad. In particular, they allege that the government's amendment of a federal fishery management plan violated the Magnuson-Stevens Act, the Administrative Procedure Act, and the National Environmental Policy Act because it failed to include these four species as part of the Atlantic herring fishery. Over the long course of this litigation, Plaintiffs have amended or supplemented their complaint several times to reflect the government's subsequent amendments to the plan. Now before the Court are cross-motions for summary judgment relating to Plaintiffs' remaining challenges, those to Amendment 5 to the Atlantic herring fishery management plan. For the reasons discussed

---

[1] Defendant Gina Raimondo, who assumed office as Secretary of Commerce in March 2021, is automatically substituted for Penny Sue Pritzker under Federal Rule of Civil Procedure 25(d).

below, the Court will deny Plaintiffs' motion, grant Defendants' and Defendant-Intervenor's, and enter judgment on Counts I and IV for Defendants and Defendant-Intervenor.

## I. Background

### A. Statutory and Regulatory Background

#### 1. The Magnuson-Stevens Act

Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act (the "MSA"), 16 U.S.C. § 1801 *et seq.*, to conserve and manage the Nation's fishery resources. The Act establishes a "national program for the conservation and management of" those resources with the aim to "prevent overfishing, to rebuild overfished stocks, to insure conservation, to facilitate long-term protection of essential fish habitats, and to realize the full potential of the Nation's fishery resources." *Id.* § 1801(a)(6). Congress nominally placed this program under the authority of the Secretary of Commerce, but in practice the Secretary delegates authority to the National Marine Fisheries Service ("NMFS" or the "Service"), a sub-agency of the National Oceanic and Atmospheric Administration. *See NRDC v. Nat'l Marine Fisheries Serv.*, 71 F. Supp. 3d 35, 40 (D.D.C. 2014).

A key feature of the MSA's conservation and management program are "fishery management plans" ("FMPs"), which are designed to "achieve and maintain, on a continuing basis, the optimum yield from each fishery." 16 U.S.C. § 1801(b)(4). The Act defines a "fishery" as "one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics," as well as "any fishing for such stocks." *Id.* § 1802(13). A "stock of fish" is defined as "a species, subspecies, geographical grouping, or other category of fish capable of management as a unit." *Id.* § 1802(42). Each FMP must include "conservation and management measures"—e.g., catch quotas, restrictions on fishing

technique and gear, and other rules and regulations—"necessary and appropriate for the conservation and management of the fishery, to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery." *Id.* § 1853(a)(1).

To develop the FMPs, among other tasks, "[t]he Act established eight regional Fishery Management Councils, each of which has 'authority over a specific geographic region and is composed of members who represent the interests of the states included in that region.'" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 667 (D.C. Cir. 2016) (quoting *C & W Fish Co. v. Fox*, 931 F.2d 1556, 1557–58 (D.C. Cir. 1991)).  The MSA provides that "[e]ach Council shall, . . . for each fishery under its authority that requires conservation and management, prepare and submit to the Secretary (A) a fishery management plan, and (B) amendments to each such plan that are necessary from time to time." 16 U.S.C. § 1852(h).  The relevant Council here oversees fisheries in the Atlantic Ocean off the coast of Maine, New Hampshire, Massachusetts, Rhode Island, and Connecticut.  *Id.* § 1852(a)(1)(A).

Once a Fishery Management Council develops a proposed FMP or amendment to such a plan, it must then submit that proposal, along with draft regulations it considers necessary to implement the proposal, to the Secretary—in practice, the NMFS—to review for consistency with the MSA and other applicable law.  *See* 16 U.S.C. §§ 1852(h)(1), 1854(a)–(b).  The NMFS must publish the proposal in the Federal Register and facilitate a notice-and-comment process, after which it must "approve, disapprove, or partially approve [the proposal]." *Id.* § 1854(a).  The MSA prescribes a similar procedure for the implementing regulations.  *See id.* § 1854(b). "If, upon completing this review, [the NMFS] approves the FMP or amendment, a final rule and one or more implementing regulations are published in the Federal Register."  *See also Oceana,*

*Inc. v. Locke*, 831 F. Supp. 2d 95, 101 (D.D.C. 2011) ("*Oceana II*") (citing 16 U.S.C. § 1854(b)(3)). The FMP, as incorporated into a final rule, and any accompanying regulations, are subject to judicial review under the APA upon filing of a petition within 30 days of promulgation. 16 U.S.C. § 1855(f)(1).

### 2. The National Environmental Policy Act

Congress enacted the National Environmental Policy Act ("NEPA") in order "to use all practicable means, consistent with other essential considerations of national policy, to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may . . . fulfill the responsibilities of each generation as trustee of the environment for succeeding generations." 42 U.S.C. § 4331(b). NEPA requires all federal agencies to prepare an Environmental Impact Statement (EIS) whenever they propose "major Federal actions significantly affecting the quality of the human environment." *Id.* § 4332(2)(C). The EIS must include a detailed statement about "(i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." *Id.* § 4332(2)(C).

### B. Factual Background

Flaherty, Hastbacka, and the Ocean River Institute ("Plaintiffs") challenge Amendment 5 to the Atlantic Herring Fishery Management Plan developed by the Council in the remaining counts of the operative complaint. 79 Fed. Reg. 8786. The Atlantic Herring Fishery Management Plan protects and manages Atlantic herring. *See Flaherty v. Bryson*, 850 F. Supp. 2d 38, 45 (D.D.C. 2012). Atlantic herring are mainly harvested by trawler vessels, which drag

4

nets behind them to catch the herring and, typically, ensnare "bycatch," other fish and marine wildlife. *See id*. The Atlantic Herring FMP first became effective in 2001, and since then the Council and the Service have periodically updated it with amendments, some of which the Court has addressed over the course of this lawsuit. *See Flaherty v. Pritzker*, 195 F. Supp. 3d 136, 141–43 (D.D.C. 2016) (discussing the factual and procedural history of this case).

Plaintiffs are particularly concerned with four species of fish—blueback herring, alewives, American shad, and hickory shad—collectively "river herring." Plaintiffs allege that river herring are "inextricably involved" with the Atlantic herring fishery because vessels fishing for Atlantic herring ensnare them as bycatch. *See* ECF No. 158 ("3d Am. Compl.") ¶¶ 71–77; 850 F. Supp. 2d at 45–47. River herring have not been designated as a "stock" within the Atlantic herring fishery such that they would be directly subject to annual catch limits and other conservation and management measures under the Atlantic Herring FMP. *Id.* at 50–51. Throughout this action, Plaintiffs have insisted that not including them in the fishery violates the MSA. *Id.* at 50–56; 3d Am. Compl. ¶¶ 82, 107–147 (Counts I–III).

C. **Procedural Background**

Plaintiffs brought this case in 2011 against the Secretary of Commerce, the National Oceanic and Atmospheric Administration, and the NMFS, challenging Amendment 4 of the Atlantic Herring Fishery Management Plan. In the original complaint, ECF No. 1, they alleged that the Atlantic Herring FMP did not comply with the requirements of the MSA and other applicable law because it failed to include river herring as "stocks" in the fishery. *Id.* ¶¶ 70–82. On March 9, 2012, this Court found that the Service had failed to adequately review the proposal not to include those stocks and granted summary judgment for Plaintiffs on that question. 850 F. Supp. 2d at 56. The Court later entered a remedial order that, among other things, remanded Amendment 4 to the Service for reconsideration and required the Service to send a letter to the

5

Council "recommending that the Council consider . . . whether 'river herring' should be designated as a stock in the fishery" based on certain information and materials identified by the Court. *See* ECF No. 41 at 10–12.

On August 31, 2012, the Service filed a supplemental letter to the Court explaining that, upon reconsideration, it concluded that Amendment 4 complied with applicable law. *See* ECF No. 42-1. On November 22, 2013, Plaintiffs moved to enforce the remedial order, arguing that the Service, in reconsidering Amendment 4, violated the Court's instructions. ECF No. 62. While that motion was pending, Defendant-Intervenor filed an unopposed motion to intervene, which the Court granted. *See* ECF Nos. 76, 85. On February 19, 2014, after briefing and a hearing, the Court denied Plaintiffs' motion to enforce. *See Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 54 (D.D.C. 2014).

While those matters were proceeding, the Council developed Amendment 5 to the Atlantic Herring FMP. Amendment 5 contains a variety of measures related to the management of the Atlantic herring fishery, some of which concern river herring, but it does not designate river herring as "stocks" in the fishery. 79 Fed. Reg. 8786. A portion of the amendment contains measures "to address the catch of river herring in the herring fishery [in order] to minimize bycatch and bycatch mortality to the extent practicable." *Id.* at 8790. The amendment creates various mechanisms for monitoring river herring bycatch, like slippage prohibitions and the requirement of affidavits as to released bycatch, and establishes river herring avoidance areas. *Id.* The amendment explains that these measures will allow the Council to "develop, evaluate, and consider regulatory requirements" for the future development of a "river herring bycatch avoidance strategy" in the herring fishery. *Id.* On February 13, 2014, the Service

6

approved the proposal and published a final rule implementing Amendment 5. *See* 79 Fed. Reg. 8786, 8796.

Plaintiffs, with the Court's leave, filed an amended complaint challenging the implementation of Amendment 5, *see* ECF No. 94, which Defendants answered, ECF No. 108. Over the course of the next two years, the parties filed periodic status reports updating the Court on efforts by the Council and Service that might resolve the parties' dispute, including the Council's review of whether to develop a new amendment to add river herring to the Atlantic Herring FMP. *See, e.g.*, ECF Nos. 122, 125, 131, 144; 3d Am. Compl. ¶¶ 99–106.

When the Council decided not to immediately undertake new action to include river herring in a proposed amendment, however, Plaintiffs sought leave to amend their complaint again, this time to name the Council as a defendant and bring claims directly against it for failure to comply with the MSA and the APA. *See* ECF No. 152. Defendants opposed, arguing that the Council's actions at issue were not "final agency actions" subject to review under the APA— because the Council was not an "agency" under the statute. *See* ECF No. 153. The Court found those issues better suited for more targeted briefing on a motion to dismiss and granted Plaintiffs' motion to amend the complaint. *See* ECF No. 156. And on September 14, 2017, the case was reassigned to the undersigned.

Not long after that, Defendants and Defendant-Intervenor moved to dismiss Counts II and III. *See* ECF No. 164 and 166. In *Flaherty v. Ross*, 373 F. Supp. 3d 97 (D.D.C. 2019), the Court held that the Council is not an "agency" as defined under the Administrative Procedure Act, and therefore dismissed Plaintiffs' claims against it for lack of jurisdiction. After that decision, the parties cross-moved for summary judgment on Counts I and IV, which remain.

7

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this case involves a challenge to a final administrative decision, the Court's review on summary judgment is limited to the Administrative Record. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 160 (D.C. Cir. 2003); *Fund for Animals v. Babbitt*, 903 F.Supp. 96, 105 (D.D.C.1995) ("Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record.").

The Court reviews agency decisions under the Magnuson–Stevens Act pursuant to § 706(2) of the APA. 16 U.S.C. § 1855(f)(1)(B) ("[T]he appropriate court shall only set aside" actions under the MSA "on a ground specified in [5 U.S.C. §§ ]706(2)(A), (B), (C), or (D)."); *Oceana, Inc. v. Locke*, 670 F.3d 1238, 1240–41 (D.C. Cir. 2011). In relevant part, 5 U.S.C. § 706(2) requires a court to hold agency action unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## III. Analysis

### 1. Standing

The jurisdiction of the federal courts extends only to cases and controversies of the "justiciable sort referred to in Article III"—in other words, claims the plaintiff can show they have "standing" to bring. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, Plaintiffs must show that (1) they have "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the*

*Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000).  Defendants first argue that Plaintiffs' suit must be dismissed because they lack Article III standing, specifically that they have failed to establish traceability or redressability.  ECF No. 182 ("Def. MSJ") at 18.

This is not the first time that Defendants have challenged Plaintiffs' standing.  The Court already held that Plaintiffs had standing to pursue nearly identical claims challenging Amendment 4.  850 F. Supp. 2d at 48–50.  There, Defendants argued that Plaintiffs had failed to show that their alleged injury was "imminent" and "traceable."  The Court determined that Plaintiffs had "alleged continuous and ongoing harm to their ability to fish for species dependent on the Atlantic and river herring" and had therefore established the imminent injury-in-fact required for standing.  *Id*. at 49.  The Court also rejected Defendants' two arguments directed at traceability: that Plaintiffs' injuries were not traceable to Amendment 4 because they (1) "occurred long before NMFS issued the final rule implementing Amendment 4" and (2) "because they concern species beyond the scope of the Amendment."  *Id.*  As for the first argument, the Court held that it did not matter that Plaintiffs' alleged injuries began before the rule itself because Plaintiffs needed "only [to] show that the agency's actions materially increased the probability of injury."  *Id.* at 50 (cleaned up).  Indeed, the Court noted, "neither proximate causation nor but-for causation" are necessary to establish traceability.  *Id.*  And as for the second argument—that Plaintiffs' injury cannot be traced to Amendment 4 because it did not address river herring—the Court dismissed it as "plainly circular."  *Id.*  After all, Plaintiffs sued to challenge that very exclusion.

Defendants' present challenge to Plaintiffs' standing is similar.  While they do not challenge imminence or injury-in-fact, they call into question traceability as well as redressability.  Defendants first argue that Plaintiff's injury is not traceable to their conduct

9

because Amendment 5 *decreases* the risk of injury to Plaintiffs.  Def. MSJ at 18.  But the traceability requirement requires only that a party's injury be "fairly traceable to the defendant's allegedly unlawful conduct."  *See DaimlerChrysler v. Cuno*, 547 U.S. 332, 342 (2006) (citation and quotation marks omitted).  And Plaintiffs allege that Defendants' unlawful conduct is not what Amendment 5 did, but what it failed to do: add river herring to the Atlantic Herring FMP.  Thus, it is of no moment that Amendment 5 may decrease the risk of injury to Plaintiffs, as measured against the status quo ante.  Plaintiffs allege that through Amendment 5, Defendants have unlawfully failed to address a plausible risk of injury to them, so the traceability requirement is satisfied.

On the issue of redressability, Defendants argue that "Plaintiffs are not entitled to any relief that would require the Council to revise Amendment 5."  Def. MSJ at 20.  And Defendants point out that the Court *did* previously dismiss the Council as a defendant because "Congress, through the APA, has not waived the federal government's sovereign immunity as applied to the Council."  373 F. Supp. 3d at 110.  But that dismissal does not mean that the Court cannot redress Plaintiffs' injuries.  For example, the Court can order the remaining Defendants to remedy a violation of law, as it already has.  *See* ECF No. 41.  And while Defendants suggest that the law would disfavor such an order, Def. MSJ at 34, the Court must still "assume for the purposes of standing that [the plaintiff] will ultimately receive the relief sought."  *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 665 (D.C. Cir. 1996).  Thus, the Court sees no reason to doubt that Plaintiff's injuries are redressable.

Finally, Defendants advance an argument that implicates both traceability and redressability.  *See Branton v. FCC*, 993 F.2d 906, 910 (1993) (traceability and redressability "tend to merge . . . in a case such as this where the requested relief consists solely of the reversal

or discontinuation of the challenged action."). They challenge the link between the lack of river herring annual catch limits and accountability measures in Amendment 5 and Plaintiffs' alleged injury—challenging causation as well as whether an order requiring implementation of such measures could redress the injury. But as the Court held earlier, "there is no doubt that increased regulation of river herring catch would contribute to the rebuilding of that stock." 850 F. Supp. 2d at 50. And Plaintiffs need only show "a substantial likelihood that the judicial relief requested will prevent or redress the[ir] claimed injury." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 79 (1978). Plaintiffs have demonstrated all three requirements of standing. Thus, the Court proceeds to the merits.

    **2.    Administrative Procedure Act Claim (Count I)**

Plaintiffs claim that Amendment 5's failure to add river herring to the Atlantic Herring FMP violated the APA because it contravened the MSA. They argue that the MSA requires the NMSA to include "all stocks of fish that are involved in a fishery and require conservation and management to be added to FMPs." Pl. MSJ at 23 (citing 16 U.S.C. §§ 1852(h)(1), 1853(a)(2)). Plaintiffs say that river herring are in need of "conservation and management" for purposes of the MSA. And while Amendment 5 contains a variety of measures related to the management of the Atlantic herring fishery, some of which concern river herring, it does not designate river herring as "stocks" in the fishery. 79 Fed. Reg. 8790. Thus, Plaintiffs argue, NMFS's approval of Amendment 5 was arbitrary and capricious under the APA.

NFMS's approval of Amendment 5 was not arbitrary and capricious. To begin with, Plaintiffs appear to argue that simply because NFMS approved the amendment, it also had to reconsider the definition of the Atlantic herring fishery as part of the amendment. The Court disagrees. NFMS's assent to Amendment 5 did not impose on it a duty to revisit a separate

11

issue, the fishery's definition. The MSA's text lays out the NMFS's obligations. *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) ("We start, of course, with the statutory text."). The MSA requires the Secretary to review proposed FMPs and FMP amendments and ensure that they conform to "the national standards, the other provisions of the [MSA], and any other applicable law." 16 U.S.C. § 1854(a)(1). And an FMP must "contain a description of the fishery, including, but not limited to . . . the species of fish involved and their location." 16 U.S.C. § 1853 (a)(2). But the statute is silent as to the reassessment of that description in subsequent FMP amendments. Instead, it provides only that each council update FMPs by submitting to the Secretary "amendments to each [FMP] that are necessary from time to time." 16 U.S.C. § 1852(h)(1).

The relevant regulations are also silent on the question of when a fishery's definition must be reassessed. National Standard Guideline 1 outlines the requirements for species identified as "stocks" in an FMP. 50 C.F.R. § 600.310(d). The Guideline does not require reevaluation of the stocks in every FMP Amendment, but instead merely notes that "Councils should review the available quantitative or qualitative information . . . [about] stocks *within a complex* on a regular basis." *Id.* § 600.310(d)(2)(ii)(B) (emphasis added). *See also Oceana, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 63 (D.D.C. 2014) ("*Oceana III*") ("The Guidelines also support the conclusion that the MSA does not require reclassification of stocks 'in the fishery' each time an FMP is amended.").

The structure of the MSA also supports the conclusion that the NMFS had no duty to consider amending the Atlantic herring fishery's definition in Amendment 5 simply because it approved it. Other portions of the MSA illustrate that when Congress wanted to establish a clear timeline for amendment of some aspect of an FMP, it knew how to do so. For example, the

12

MSA requires that the Secretary immediately inform the relevant regional counsel when it is determined that a fishery is overfished. 16 U.S.C. § 1854(e)(2). It then sets a two-year deadline for the Council to "prepare and implement [an FMP], plan amendment, or proposed regulations . . . to end overfishing in the fishery and to rebuild affected stocks of fish" and provides that if the Council fails to act within the two-year period, the Secretary must prepare an appropriate FMP or plan amendment. *Id.* at § 1854(e)(3)-(5). Thus, as one court concluded, "where a species is found to be both experiencing overfishing and already overfished," the MSA requires that "any plan amendment designed to halt the overfishing also include a plan to rebuild the overfished stocks." *N. Carolina Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 97 (D.D.C. 2007); *see* 16 U.S.C. § 1853 (a)(10).[2]

But as the court in *N. Carolina Fisheries* observed, some of the MSA's required provisions are "quite general . . . while others are more specific." 518 F. Supp. 2d at 97–98. In contrast to the specific provisions at issue in *N. Carolina Fisheries,* the MSA creates no similar process or timeline for amendments to an FMP generally or to update of the description of a fishery. And "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015). The absence of such provisions underscores the Court's conclusion that by approving Amendment 5, the NMFS was not required to also consider whether to change the fishery's definition, and the Court will not create such a duty. *See Rotkiske v. Klemm*, 140 S. Ct.

---

[2] Congress amended this structure slightly in the 2007 Reauthorization of the MSA. *See* Pub. L. No. 109–479, § 104(c)(3), 120 Stat. at 3584. While *N. Carolina Fisheries* analyzes an earlier version of the statute, this Court's analysis references the present version of the statute, which is materially similar.

13

355, 361 (2019) ("Atextual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision.").

Plaintiffs also argue that NFMS's approval of Amendment 5 was arbitrary and capricious because in their view river herring need conservation and management under the MSA, and so it was "necessary" that Amendment 5 include them in the Atlantic herring fishery. 16 U.S.C. § 1852. But the NFMS had reached no such conclusion. In accordance with the Court's remedial order, ECF No. 41, the NMFS recommended that the Council consider whether river herring should be part of the fishery. ECF No. 42-2. The Council then considered that question in a process separate from the development of Amendment 5. *See* ECF No. 182-1, at 16. And the Council did not find that river herring should be added. Thus, this argument provides no reason to find that NFMS's approval of Amendment 5 was arbitrary and capricious, and Plaintiffs do not identify any other reason to conclude that the amendment was flawed for this reason.[3]

---

[3] In Count I of the operative complaint, Plaintiffs allege only that NFMS's approval of Amendment 5 was arbitrary and capricious; they do not challenge the Council's decision to decline to add river herring to the fishery because river herring were not in need of conservation and management. ECF No. 158 at 31–34. And as the Court has already held, the Council is not an "agency" such that its decisions are reviewable under the APA. 373 F. Supp. 3d at 110. In any event, the Court notes that the relevant regulations afford this decision significant discretion. 81 Fed. Reg. 71,864 (noting that National Standard 1 guidelines "allow significant discretion for the Councils to evaluate the specific facts presented by a wide variety of stocks and fisheries to determine the necessity and utility of federal management"). And Plaintiffs do not explain with any clarity the basis on which they *could* argue that that decision was arbitrary and capricious. *See also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (An agency need only "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.").

3.      **National Environmental Policy Act Claim (Count IV)**

NEPA requires an agency to prepare an Environmental Impact Statement for any proposed major federal action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS requires the agency to "take a hard look at the environmental consequences before taking a major action." *Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 97 (1983) (cleaned up). "An EIS must detail the environmental impact of the proposed action, any adverse effects, alternatives to the proposed action, the relationship between the short-term uses and the long-term effects, and any irreversible commitments of resources." *Conservation L. Found. v. Ross*, 374 F. Supp. 3d 77, 111 (D.D.C. 2019).

Defendants prepared an EIS for Amendment 5 to the Atlantic Herring FMP. *See* Final Environmental Impact Statement for Amendment 5 to the Atlantic herring FMP (March 25, 2013) ("FEIS"); *see also Oceana II*, 831 F. Supp. 2d at 101 ("The approval of FMPs and amendments to FMPs are considered major Federal actions within the meaning of NEPA."). Plaintiffs argue that Defendants violated NEPA because the Amendment 5 EIS failed to take a "hard look" at the definition of the Atlantic herring fishery and consider all reasonable alternatives to address river herring bycatch.

Plaintiffs' challenge misunderstands the scope of an EIS. An EIS focuses on the proposed federal action and need only take a "hard look" at *that action* and a limited range of alternatives to it. *Conservation L. Found.*, 374 F. Supp. 3d at 111. As discussed above, the MSA did not require Defendants to reconsider a separate issue, the description of the fishery, when approving Amendment 5. Therefore, to the extent Plaintiffs challenge the failure of the EIS to take a "hard look" at the description of the Atlantic herring fishery, or consider alternatives to the present description, such an analysis is not required by NEPA. *Kleppe v.*

*Sierra Club*, 427 U.S. 390, 410 (1976) ("The only role for a court is to insure that the agency has taken a hard look at environmental consequences; it cannot interject itself within the area of discretion of the executive as to the choice of the action to be taken.") (quotation marks omitted). Similarly, an EIS need only consider a limited range of alternatives to the relevant action, defined by the agency's objectives. *See Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 195 (D.C. Cir. 1991) ("[T]he proposed alternative is reasonable only if it will bring about the ends of the federal action"). Nothing in the record here suggests that the objective of Amendment 5 included a reassessment of whether river herring should be included as "stocks" in the fishery. The agency's objectives, which included "measures to address river herring bycatch," were far more modest.[4] 74 Fed. Reg. 68,576.

Plaintiffs also suggest that Defendants needed to consider the addition of river herring to the fishery description as an alternative measure to "address river herring bycatch." 74 Fed. Reg. 68,576. But an agency need not consider every possible alternative that could address an objective. Instead, "the agency has discretion to choose a manageable number of alternatives to present a reasonable spectrum of policy choices that meet the goals of the action." *Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203, 241 (D.D.C. 2005) ("*Oceana I*"). And under NEPA, the Court's role is merely "to assure that [the agency] has met 'certain minimal standards of rationality' in designing a reasonable range of alternatives." *Id.* at 246 (citation omitted). The Court evaluates

---

[4] The NMFS issued a Notice of Intent to prepare an EIS for Amendment 5, which defined the "measures considered under Amendment 5 [to] include: catch-monitoring program; measures to address river herring bycatch; criteria for midwater trawl access to groundfish closed areas; and measures to address interactions with the Atlantic mackerel fishery." 74 Fed. Reg. 68,576 (cleaned up).

16

the adequacy of an EIS according to a "rule of reason," given the scope and purpose of the proposed action. *Tongass Conservation Soc'y. v. Cheney*, 924 F.2d 1137, 1140 (D.C. Cir. 1991).

In considering this objective, the NMFS considered three alternatives: a "no action" alternative, "river herring monitoring/avoidance," and closures for "river herring protection." FEIS at xii–xxii. And within these three alternatives, NMFS considered six suboptions, including 100% observer coverage, sampling, trigger-based monitoring, cooperation with the fishing industry for bycatch analysis, closed areas, and trigger-based closed areas. *Id.* at xxi–xxii. NMFS's consideration of this variety of alternatives and suboptions fulfilled its duty to consider a reasonable range of alternatives under NEPA. *See Oceana III*, 24 F. Supp. 3d at 65 ("Where an issue is particularly complex, the scope of reasonable alternatives is necessarily limited.") *See also id.* (identifying fishery management as "exceedingly complex"). This is especially so when there is little record evidence that inclusion of river herring in the Atlantic herring fishery is a good fit for the NMFS's narrower goal of addressing river herring bycatch. 16 U.S.C. § 1853 (describing the FMP provisions required for each species of fish named in a fishery description, which stretch beyond addressing bycatch).

**IV.    Conclusion**

For all these reasons, Defendants' Motion for Summary Judgment, ECF No. 182, and Defendant-Intervenor's Motion for Summary Judgment, ECF No. 183, will be granted and Plaintiffs' Motion for Summary Judgment, ECF No. 178, will be denied. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 26, 2021